UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| KELLYLEE SEXTON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CV-110-TLS |
| | ) | |
| CAPTAIN BELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Plaintiff, Kellylee Sexton, is proceeding pro se on a claim that he was denied adequate bedding, clothing, and footwear at the LaPorte County Jail. The Defendants—Captain Scott Bell, Sergeant Stephen Vance, and Deputy Kim Thomason—move for summary judgment [ECF No. 14.] For the reasons stated below, the Motion is granted.

**LEGAL STANDARDS**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely

merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

As an initial matter, the Plaintiff did not file a response to the Motion for Summary Judgment, despite being given proper notice of the Motion. (Notice of Summ. J. Mot. to Pro Se Litigation, ECF No. 16.) Pursuant to N.D. Ind. Local Rule 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* The court still must "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

## STATEMENT OF FACTS

The following facts are undisputed. the Plaintiff arrived at the jail in October 2011. (Mem. of Law 3, ECF No. 15.) On April 24, 2012, he informed Deputy Larry Oszust that he intended to harm himself and felt suicidal. (*Id.*) The Defendants were aware that the Plaintiff had previously attempted suicide on two occasions, including less than a year earlier when he ran in front of a moving vehicle. (*Id.*) Because of his statements and his past history, the Plaintiff was placed in administrative segregation on suicide watch. (*Id.*)

The LaPorte County Sheriff's Office has Standard Operating Guidelines that address the issue of suicidal inmates. (*Id.*) Inmates who express suicidal thoughts are placed in administrative segregation in a holding cell so they can be monitored by jail personnel. (*Id.*) Upon being placed on suicide watch, an inmate is not permitted to have any clothing or footwear, other than a "suicide smock," also known as a "turtle suit." (*Id.*) A suicide smock is a gown-like garment made of thick, padded, quilted material that is difficult to rip or shred so that the inmate cannot use it as a means to commit suicide. (*Id.* at 4.) Inmates on suicide watch are also not provided with a mattress, because mattresses are capable of being ripped up and used as a means of committing suicide. (*Id.*) Instead, inmates are provided with a "suicide blanket," which is made of a thick, padded, quilted material that provides warmth and comfort, but is very difficult to rip or shred. (*Id.*) While an inmate is on suicide watch, he is not permitted to have any other items in his cell. (*Id.*)

In accordance with these procedures, when the Plaintiff was placed on suicide watch he was given a suicide smock and a suicide blanket, and all other clothing, footwear, and other items were taken from him. (*Id.*) The Plaintiff remained on suicide watch until May 1, 2012, when he entered into a "safety contract," whereby he agreed to refrain from harming himself. (*Id.*) The conditions under which the Plaintiff was housed while on suicide watch were not intended to punish him, but instead were intended to keep him safe and prevent him from acting on any suicidal thoughts. (*Id.* at 5.)

The jail had a grievance policy in place during all relevant events. (*Id.*) Under the policy, inmates can file a grievance concerning "any matter felt unjust or not in keeping with jail standards." (*Id.*) Sexton was provided with a copy of the grievance policy when he was booked

at the jail. (*Id.*) Under the policy, inmates must file a grievance within five business days of the incident forming the basis for the grievance. (*Id.* at 6.) If dissatisfied with the response, the inmate can appeal within five days of the response. (*Id.*) To facilitate use of the grievance process, the jail has electronic kiosks through which grievances can be electronically submitted to the jail commander. (*Id.*)

A record is kept of all inmate grievances, and those records reflect that during the seven months the Plaintiff spent at the jail, he filed more than one hundred grievances pertaining to the conditions of his confinement. (*Id.*) This included filing a grievance on April 24, 2012, the day he was placed on suicide watch, asking when he could be taken out of the "turtle suit." (*Id.*) He continued to file grievances after his release from suicide watch, but at no time did he file a grievance pertaining to a lack of proper footwear or bedding. (*Id.*)

## ANALYSIS

A.   **Exhaustion of Administrative Remedies**

The Defendants first argue that Sexton failed to exhaust his administrative remedies as to the footwear and bedding claims. Pursuant to the Prison Litigation Reform Act (PLRA), prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Turley v. Rednour*, — F.3d —, 2013 WL 3336713 at *2 (7th Cir. July 3, 2013); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The United States Court of Appeals for the Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. Thus,

4

"[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. This includes failing to comply with time deadlines contained in the grievance policy. *Id.* at 1025.

Applying those principles here, the record shows that the Plaintiff filed a grievance which can be read to complain about a lack of proper clothing. *See Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (grievance is sufficient if it "alerts the prison to the nature of the wrong" about which the prisoner is complaining). However, he did not file any grievance regarding a lack of proper footwear or bedding. Under these circumstances, he failed to exhaust his claim pertaining to those alleged deprivations. *See Pozo*, 286 F.3d at 1025.

**B.      Conditions of Confinement**

The Defendants alternatively argue that, even if the Plaintiff properly exhausted his claims, these claims nevertheless fail on the merits.[1] Because the Plaintiff was a pretrial detainee at the time of these events, the Fourteenth rather than the Eighth Amendment applies to his conditions of confinement claim. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, however, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id*. "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but

---

[1] The defendants do not argue that Sexton failed to exhaust his clothing claim, so the merits must be addressed in any event.

inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). To establish liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) he was denied the minimal civilized measure of life's necessities; and (2) the defendant acted with deliberate indifference to his needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citation omitted).

Here, the undisputed facts show that the Plaintiff had a history of suicidal thoughts, and had made two prior attempts to commit suicide. The Defendants were aware of the Plaintiff's history. The Plaintiff told a member of the jail staff that he had thoughts of hurting himself, and he was immediately moved to a holding cell to be placed on suicide watch. Pursuant to policy, he was not permitted to have clothing, footwear, or a regular mattress in his cell, since such items can be used as a means of committing suicide. However, he was provided with a suicide suit and a suicide blanket as an alternative means of warmth and comfort.

Although the conditions the Plaintiff experienced were likely not pleasant or comfortable, the record shows that he was placed on suicide watch for his own protection. Indeed, once the Defendants were on notice that the Plaintiff presented a risk of suicide, they were required to take action to prevent him from injuring himself. *See Miller v. Harbaugh,* 698 F.3d 956, 963 (7th

Cir. 2012); *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). The record reflects that the

Defendants took prompt and appropriate steps to ensure the Plaintiff's safety, and they took him off suicide watch and removed the attendant conditions when he agreed to refrain from hurting himself. Under these circumstances, the Plaintiff has not established a violation of his constitutional rights. Accordingly, the Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the court GRANTS the Motion for Summary Judgment [ECF No. 14] and DIRECTS the Clerk to enter judgment in favor of the Defendants.

SO ORDERED on August 14, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION